IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PETER BRUENING,

        Plaintiff,

v.

DATABRICKS, INC.,

        Defendant.

Case No.   24-822

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES Plaintiff, Peter Bruening, by and through his attorney, David M. Manes, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I.      Nature of the Action

1.      Plaintiff brings this Complaint to recover damages under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"), Plaintiff alleges that he was discriminated against under the ADEA and the PHRA.

### II.      Jurisdiction and Venue

2.      This action arises under the ADEA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3.      Plaintiff is a resident and citizen of Pennsylvania, and a substantial part of the events giving rise to the claims occurred in Western Pennsylvania. Therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and the venue is proper pursuant to 28 U.S.C. §1391(b).

4.      Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding his allegations under the ADEA on October 16, 2023, under charge number 533-2024-00155. *See Exhibit 1.*

5.     Plaintiff was mailed a Notice of Right to Sue from the EEOC on June 4, 2024. This complaint has been filed within ninety (90) days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2.*

### III.     Parties

6.     Plaintiff, Peter Bruening, is an adult individual who currently resides at 401 Springwater Court, Moon Township, Pa 15108.

7.     Defendant, Databricks, Inc. is a foreign business corporation with its principal place of business at 160 Spear Street, 13th Floor, San Fransisco, CA 94105.

### IV.     Facts

8.     Plaintiff was hired by the Defendant to work as an Account Executive on March 8, 2021 remotely.

9.     On May 11, 2023, Jeff Farris, a manager of Databricks sales team, made a comment referring to himself, "I'm probably the oldest guy on this team. Well, except probably for Pete."

10.     Plaintiff was singled out on the basis of his age, which had made him uncomfortable.

11.     On July 27, 2023, Plaintiff received an Interim Performance Review over a video call with Farris.

12.     Prior to the unjust review, there was no previous discussion about termination or a possible Performance Improvement Plan ("PIP").

13.     This performance review was not documented or posted to the Databricks Workday site.

14.     There is no formal documentation showing that there was a review of Plaintiff.

15.     On July 28, 2023, Plaintiff had a telephonic meeting with Farris's direct supervisor, David McKechnie, regarding the performance review.

16.     During this phone call, Plaintiff was told "You're a good guy. This is nothing personal. Well, I guess it's personal for you. But this is just where we are with the company and we have to make some changes."

17.     This meeting had no bearing on specific factors of Plaintiff's performance, but did evidence that there were reasons, personal to Plaintiff, for the meeting.

18.     Plaintiff was given the option of a PIP or a Separation Agreement.

19.     There was no reason for Plaintiff to be put on a PIP has he had no previous warnings or reviews apart from the meeting with Farris on the 27th.

20.     A proposed PIP and Separation Agreement was promised for the following Monday so Plaintiff could compare his options.

21.     After this meeting, Plaintiff created a ticket with Human Resources requesting an inspection of his personnel file as Databricks Employee Handbook states is allowed.

22.     A member of HR responded saying that they will get back to Plaintiff on how to go about that.

23.     On August 1, 2023, Plaintiff followed up after having no further response to his request. On August 14, 2023, Plaintiff did receive an email with a link to his personnel file.

24.     There was no evidence in Plaintiff's file pertaining to performance warnings, a PIP, or a dismissal from his position.

25.     On July 31, 2023, neither Farris nor McKechnie, provided the promised proposals.

26.     Plaintiff was provided with an email on August 3, 2023 outlining the terms Separation Agreement, with no option of the previously mentioned PIP.

27.     On August 4, 2023, Farris requested a telephonic meeting.

28.     During this meeting, Farris stated that he reviewed the PIP with Human Resources prior to the interim review.

29.     Farris failed to provide the PIP before or after the interim review.

30.     Plaintiff requested to see the PIP but was informed that by sharing it with him it would be equal to him accepting the plan.

31.     This "policy" is not in accordance to Databrick's policy in presenting PIP to their employees.

32.     Upon Plaintiff's request to have the terms discussed, Farris spoke in regards to closing open accounts in Plaintiff's control.

33.     Farris told Plaintiff that Plaintiff would have to close significant deals within the next 30 days and to increase consumption, and that Farris didn't know how that would be achievable.

34.     Plaintiff stated that if the deals could have been made within the next 30 days, Plaintiff would have already been working to close them.

35.     Farris stated "It's not really something I think you could do."

36.     Plaintiff inquired about other employees who are being terminated from sales, all of which are 40 years of age or older.

37.     On August 7, 2023, Plaintiff received a text message from Farris regarding the acceptance of the Separation Agreement, not the acceptance of the PIP.

38.     Plaintiff was put under pressure to accept the agreement or be terminated from his position with no severance offered.

39.     On August 8, 2023, Plaintiff accepted the Separation Agreement under duress of receiving no severance after two years of dedication to Databricks and his position.

40.     During Plaintiff's employment with Databricks, his sales territory was decreased by 95.5%, which decreased his ability to meet sales objectives.

41.     During the entirety of Plaintiff's tenure with Databricks, his sales quota only dropped by 16% as a result.

42.     Plaintiff had 40 accounts, and was dropped to 2 accounts during his tenure with Databricks.

43.     Plaintiff was terminated for "performance" after Databricks forced his numbers to fall.

44.     Other employees whom also worked as Account Executive's and experienced similar discrimination on the basis of their age was Andrew Bieler (49), Houman Dehesh (40), Mark Harrison (45), Ralph Pfitzer (45), and Wayne Porter (53).

45.     This is a direct correlation to the termination of Plaintiff on the basis of his age, as well as the other employees listed.


**COUNT I**
**Discrimination in Violation of the Age Discrimination in Employment Act**

46.     The averments contained in the preceding paragraphs are incorporated herein as if set forth at length.

47.     Plaintiff was over the age of 40 at the time of the incidents in this Complaint and is thus part of a protected class.

48.     Plaintiff was qualified to his job as an Account Executive.

49.     Defendant engaged in unlawful discrimination in violation of the ADEA by discriminating against Plaintiff due to his age.

50.     During his employment, Defendant forced Plaintiff's numbers to fall.

51.     There are specific instances where Plaintiff's age was pointed out, such as "I'm probably the oldest guy on this team. Well, except probably for Pete" and "You're a good guy. This is nothing personal. Well, I guess it's personal for you. But this is just where we are with the company and we have to make some changes."

52.     Plaintiff was terminated shortly after these comments were made.

53.     Plaintiff believes, therefore avers, that he was terminated on the basis of his age.

54.     Other Account Executives over the age of forty (40) were also terminated prior to Plaintiff.

55.     As a direct and proximate result of Defendant's discriminatory actions in violation of the ADEA, Plaintiff has lost wages and other economic benefits.

56.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.


## Count II
## Age Discrimination in Violation of the PHRA

57.     The averments contained in the preceding paragraphs are incorporated herein as though set forth in length.

58.     Plaintiff was over forty (40) years of age at all times relevant to this Complaint, and is of a protected class.

59.     Plaintiff was qualified to do his job.

60.     Defendant engaged in unlawful discrimination in violation of the PHRA by discriminating against Plaintiff due to his age.

61.     There are specific instances where Plaintiff's age was pointed out, such as "I'm probably the oldest guy on this team. Well, except probably for Pete" and "You're a good guy. This is nothing personal. Well, I guess it's personal for you. But this is just where we are with the company and we have to make some changes."

62.     Plaintiff was terminated after these comments were made.

63.     Plaintiff did not participate in any action warranting a termination.

64.     Plaintiff believes and therefore avers that his termination was due to discriminatory reasons on the basis of his age.

65.     Plaintiff's sales numbers were forced to fall at the hands of Defendant.

66.     Other Account Executives over the age of forty (40) were also terminated prior to Plaintiff.

67.     As a direct and proximate result of Company's discriminatory actions in violation of the PHRA, Plaintiff has lost wages and other economic benefits.

68.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Peter Bruening, respectfully requests that this Court enter judgment in his favor and against Defendant, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, court costs, attorney fees,

prejudgment and continuing interest, and any other relief that the Court deems necessary and proper.

Respectfully Submitted,

David M. Manes, Esq.
PA ID No. 314661

**MANES & NARAHARI, LLC**
One Oxford Centre
301 Grant St, Suite 270
Pittsburgh, PA 15219
(412) 626-5570 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

**<u>VERIFICATION</u>**

I, Peter Bruening, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

06/05/2024
_____
Date

_____
Peter Bruening